UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT CHRISTOPHER JIMENEZ, | No. C 06-3549 SI (pr) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| D. SISTO, Warden, | |
| Respondent. | |

## INTRODUCTION

This matter is now before the court for consideration of the merits of Robert Christopher Jimenez's pro se petition for writ of habeas corpus concerning his conviction in the Santa Clara County Superior Court. For the reasons discussed below, the petition will be denied. The court also will address several pending motions.

## BACKGROUND

The California Court of Appeal described the evidence of the killing that led to Jimenez's murder conviction:

> Appellant lived with his mother, Barbara Jimenez, her husband, Sal Munoz, appellant's brother Patrick Jimenez, appellant's nephew, Angel Perez, and appellant's niece, Barbara Angel Jimenez. At trial, Perez testified that appellant and Munoz sometimes argued, but that he had never seen them in a physical fight. One night, Munoz, Barbara Jimenez, Perez, and most of the family were watching a football game on the television in the living room. Appellant was home but did not watch the game. At halftime, everyone left the living room except Munoz. From his room, Perez heard a sound like a firecracker. He opened his bedroom door and heard the sound again. He heard Munoz say, "Oh." Perez left his room and saw appellant and Munoz in the living room. Appellant was standing with his arm extended and a gun in his hand pointed toward Munoz. Munoz was hunched over on the couch. Perez grabbed appellant and they struggled out into the

street. Patrick Jimenez, who had heard the same noises, came to the living room and heard Perez yelling. Perez told Patrick Jimenez that appellant had a gun. Patrick Jimenez pried the gun from appellant's hand. Barbara Jimenez joined the three and pulled Perez off of appellant who jumped a fence and ran away. Munoz died from two gunshot wounds to his head and neck. Appellant was arrested later that night.

Cal. Ct. App. Opinion, pp. 1-2.

Following a bench trial in Santa Clara County Superior Court, Jimenez was convicted of second degree murder and possession of a firearm by a felon. The court found true the allegations that Jimenez had personally used a firearm and that he had several prior convictions. Jimenez was sentenced to 70 years to life plus a 5-year consecutive term in state prison.

He appealed. The California Court of Appeal affirmed the conviction in a reasoned opinion on July 21, 2005, but modified the sentence to stay the sentence on the firearm possession conviction. The California Supreme Court denied his petition for review.

Jimenez then filed this action. After he amended his petition, the court found cognizable five claims for ineffective assistant of trial counsel. Respondent filed an answer in which he contended the claims were meritless and that state court remedies had not been exhausted as to several of them. The court ordered Jimenez to choose what to do about the unexhausted claims (i.e., whether to dismiss the unexhausted claims, dismiss the petition, or move for a stay to allow him to exhaust). Jimenez thereafter filed several documents that gave confusing signals as to his intent. Eventually, however, he filed a motion for a stay so that he could exhaust his state court remedies as to the unexhausted claims. Before the court ruled on the motion to stay, Jimenez filed a motion to amend, in which he reported that he had received a decision from the California Supreme Court rejecting his newly exhausted claims and was ready to proceed with their consideration in this court. Respondent did not oppose any of Jimenez's motions. At this point in time, the court has received the briefing from both parties on the merits of the claims, and therefore is ready to consider the matter on the merits. That is, it does not appear that it is necessary to have the parties further brief the merits of the claims since respondent briefed the claims in his response to the order to show cause, and petitioner has argued the merits of the claims in his motion to amend that was filed after respondent's response.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over the petition for writ of habeas corpus under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in Santa Clara County, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. 28 U.S.C. § 2254(b), (c). State judicial remedies have been exhausted for the claims presented in this action.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially

indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

## DISCUSSION

A.  Petitioner's Motions

Jimenez filed a motion for law library access to prepare a motion for a stay, and then filed a motion for a stay so that he could exhaust his state court remedies as to the unexhausted claims. Before the court ruled on those motions, Jimenez filed a motion to amend, in which he reported that he had received a decision from the California Supreme Court rejecting his newly exhausted claims and was ready to proceed with their consideration in this court. In his motion to amend, petitioner included several arguments in support of the same ineffective assistance of counsel claims that had been in his original petition. Respondent did not oppose any of Jimenez's motions. The court DISMISSES the motion for access to a law library as moot, GRANTS the motion for a stay, and GRANTS the motion to amend. (Docket # 25, # 26, and # 27.) Now that the state court remedies have been exhausted, and the merits of the claims have been briefed it is time to consider the merits of the petition.

B.  Merits Of The Petition

The Sixth Amendment's right to counsel guarantees not only assistance, but effective assistance, of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). The benchmark

4

for judging any claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. Id. In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, Jimenez must establish two things. First, he must demonstrate that counsel's performance was deficient and fell below an "objective standard of reasonableness" under prevailing professional norms. Id. at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. The relevant inquiry under Strickland is not what defense counsel could have done, but rather whether his choices were reasonable. See Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998). With these standards in mind, the court now considers the five contentions made by Jimenez.

1.  Failure To Make An Oral Argument In Support Of Motion To Strike Priors

Jimenez contends that trial counsel failed "to make any arguments whatsoever at [his] sentencing hearing." Order Of Amend, p. 2. (Docket # 6.) Jimenez suggests that counsel did nothing to aid his cause, as he sat silently at the sentencing proceeding and did not argue that the court should dismiss prior convictions to lighten his sentence.

Defense counsel did not present oral argument at sentencing but did file a written motion two months before the sentencing hearing that requested the court to exercise its discretion and dismiss the prior convictions. See CT 157-206. "The motion reported appellant's history in great detail starting from his birth and including his personal struggles with family tragedy and substance abuse. The motion included as an attachment the police report for the incident that resulted in appellant's conviction for two strike priors. Other attachments were a 14-page psychological evaluation of appellant and seven letters from friends and family members seeking leniency for appellant." Cal. Ct. App. Opinion, p. 2. The trial court noted at sentencing that he had considered the motion. Id.; see also RT 206.

The California Court of Appeal rejected the claim that counsel was ineffective in not making any argument at the sentencing hearing:

> Here, although counsel did not argue at the sentencing hearing, counsel did prepare and file a lengthy, moving account of appellant's personal history, criminal history, and psychological problems. Appellant, while acknowledging that this written motion was "extensive," criticizes that motion as "a regurgitation of a *Romero* motion in a previous case" as shown by "the failure to change the name of the defendant on the first page." The written motion does contain what could be characterized as a word processing error, having the wrong name for the defendant in one heading of the motion, but the correct name in the caption, the rest of the headings, and the body of the motion. The motion itself is a thoughtful, thorough discussion of reasons for the court to exercise its discretion under Penal Code section 1385 by striking appellant's prior convictions.
>
> Appellant argues that counsel should have argued under *People v. Benson* (1998) 18 Cal.4th 24, that the trial court had discretion to strike one of appellant's strike priors because the two strikes resulted from two convictions incurred in a single proceeding. However, the motion pointed out that both of appellant's strike convictions arose out of the same set of operative facts, and argued that this incident was essentially a bar fight, supporting that argument by attaching a police report. [Footnote omitted.] Although the motion did not specifically cite *Benson*, the record shows that the court and counsel were aware of the court's discretion to strike a prior conviction under these circumstances.
>
> The sentencing hearing was an emotional one, as shown in the court's remarks to Barbara Jimenez, acknowledging her grief as both appellant's mother and the decedent's wife. It was well within the range of effective assistance for counsel to determine that it was not necessary to supplement his well-prepared written motion with oral argument. The trial court's comments indicate a thorough understanding of the scope of its discretion regarding appellant's prior convictions and the possible reasons for exercising that discretion. The trial court did strike the prison sentence for appellant's five prison priors. Appellant has not established either deficient performance or prejudice.

Cal. Ct. App. Opinion, pp. 3-4.

The California Court of Appeal's rejection of this claim was not contrary to, or an unreasonable application of, clearly established law as set forth by the U. S. Supreme Court. The state appellate court cited the correct standard, and reasonably applied it. The fact that trial counsel did not supplement his written motion with oral argument does not show ineffective assistance. Nothing requires that a lawyer rehash the contents of his motion by reading it aloud or restating the same points at a hearing. It is important that the lawyer provide the necessary information to the court for it to consider in deciding a matter, but there is no priority given to oral arguments over written arguments. What is critical is that the court receives the information; here, that occurred.

Jimenez points to the fact that the mistaken use of another defendant's name on the first

6

page of the motion as proof that it was just a rehash of an earlier motion. This court disagrees. Notwithstanding that single word processing error, the text of the motion shows that it was tailored to Jimenez's case in that it discussed the calculation of his particular sentence based on his age and criminal activity, CT 160, discussed Jimenez's criminal history, CT 161, and discussed Jimenez's personal history at length, CT 161-166, all to urge the court to treat Jimenez "as though he falls outside the 'spirit' of the three strikes law," CT 167, and should be sentenced accordingly. The attachments to the motion show the great care with which it was assembled, as several of the attachments had to take time and effort for counsel to obtain. There were police reports pertaining to the criminal activity that led to the prior conviction, to support the argument in the motion that "both strike convictions arise out of the same set of operative facts" that was "essentially" a bar fight. CT 161, 170-181. There was a psychological evaluation done after the psychologist had interviewed Jimenez on ten occasions over a ten-month period that bolstered the argument in the motion that he had personal tragedies, a substance abuse problem and emotional problems that warranted consideration in the sentencing decision. CT 161-166, 183-195. And there were letters of support from his family that were urged to be considered in the sentencing decision. CT 166, 197-205.

Jimenez argues that there was a case on point that should have been included in the argument as it addressed the ability of a trial court to strike a prior when two convictions were incurred in a single proceeding.[1] Although that particular case was not mentioned in the written motion, the motion argued that a "just sentence can only be found if this court exercises its discretion and strike[s] the prior allegations." CT 160. Also, as the state court of appeal

---

[1] Jimenez contends that counsel should have made an argument under People v. Benson, 18 Cal.4th 24 (Cal. 1998). Benson would not have provided much help to him, as that case merely noted in passing that the trial court had the discretion to strike one prior when the two priors were closely related. Benson had distinguishable facts (i.e,, a single victim against whom the defendant committed several related crimes, in contrast to Jimenez's two victims in the bar fight). The vast majority of the discussion in Benson concerned whether the multiple convictions arising out of a single criminal episode could be counted as multiple strikes and ultimately concluded that they could be so counted. Benson simply was not the kind of opinion that would have made Jimenez's sentencing judge change course had the decision been pointed out to him by defense counsel.

7

explained, the motion pointed out that the two strike convictions arose out of one set of operative facts (i.e., a bar fight), and the record showed that the court and counsel were aware of the court's discretion to strike one of the priors under these circumstances. See Cal. Ct. App. Opinion, p. 4. The transcript of the sentencing hearing also did not indicate that the trial judge would have been persuaded to choose a lighter sentence if he had been directed to read that one apposite case. Read in context, the sentencing judge's comments did not (contrary to Jimenez's belief) suggest that he wanted to impose a lighter sentence but didn't know of a case that would allow it. Rather, the judge's comments indicated that he was restricted in his sentencing options by the bad facts: the prior convictions, the long criminal history (i.e., five prison priors, one serious felony, and two strike prior convictions) and especially because Jimenez's current offense was the crime of murder. See RT 211-212.

Jimenez has not shown either deficient performance or resulting prejudice from his attorney's failure to supplement his written motion with oral argument at the sentencing hearing, or failure to cite a particular helpful case regarding the striking of prior convictions. This ineffective assistance of counsel claim fails.

### 2. Failure to Explain A Plea Bargain Offer

Jimenez argues that his counsel was deficient in that he never explained the prosecutor's plea offer to Jimenez. This claim fails because Jimenez has presented no evidence that a plea offer was made. Not only has he not presented any evidence of a plea offer, respondent presented evidence indicating that there wasn't one. Assistant district attorney Dana Overstreet declared that she believed she had not made a plea offer in this case based on her lack of recollection of making any offer and her affirmative statement to the victim's family before the trial that the defendant was not interested in a plea bargain. See Exh. H. Defense counsel did not engage in deficient performance for not communicating the unmade offer, and there was no reasonable probability that the client could have taken a plea bargain instead of going to trial because the former was not an option. Jimenez's claim fails on both prongs of the Strickland

test.

### 3. Failure To Investigate The Case Thoroughly

Jimenez argues that his trial counsel failed to investigate the case thoroughly to prepare for trial. See Order Of Amend, pp. 2-3.

Jimenez contends that counsel's inadequate investigation is shown by the fact that the trial court made a finding that Jimenez shot an unarmed person seated in a chair when there was no evidence provided by any witness that the victim was seated. Motion To Amend, p. 2. (Docket # 27.) This argument has no merit. The trial court made this finding in the course of reaching his decision that Jimenez was guilty of the crime of murder and that the elements of murder were present. See RT 199. Although no one saw the actual shooting, there was uncontradicted testimony from two witnesses that would have allowed any reasonable trier of fact to conclude that the victim was seated when shot. Specifically, Angel Perez testified that he saw his grandfather hunched over on the sofa while Jimenez was standing behind him with his arm extended toward him with a gun in hand, and Patrick Jimenez testified that he saw the victim hunched over in his seat on the sofa. Both testified that the victim was seated on the sofa when they left the room moments earlier. The victim had been shot twice in the head and neck and there was absolutely no evidence that he was doing anything to provoke a confrontation. Certainly it was not deficient performance to not challenge the judge's finding that the victim was seated while shot because (a) the evidence easily supported the inference that the victim was shot while seated and (b) whether he was seated or standing would not have altered the court's determination that the crime was a murder. See RT 199.

Jimenez also argues that counsel did not investigate Angel Perez's credibility, apparently an issue because Perez was detained in juvenile hall at the time of trial. Motion To Amend, p. 3. The record shows this argument to be meritless. The court at the preliminary hearing was aware of Perez's juvenile delinquency problems, see CT 50, and both the prosecutor and defense attorney elicited testimony from Perez that he was serving a sentence in juvenile hall because

9

a petition had been sustained against him. Further, it isn't clear how much investigation counsel could have done that would have uncovered anything Jimenez could not have told him. As the uncle of Perez and one who lived in the same household with him, Jimenez should have been able to tell counsel about any details of Angel's criminality of which he was aware. Jimenez has not shown deficient performance or resulting prejudice with regard to the alleged failure to investigate Perez.

Jimenez also argues that counsel should have investigated certain problems with the gun, i.e., contradictions about whether it was jammed and that his fingerprints were only on the inside of the grip. Jimenez does not explain why the condition of the gun or the prints on the gun would have made any difference in light of the uncontradicted testimony that he was found standing over his stepfather with the gun in his hand after his stepfather had been shot twice in the head and neck, and that his brother Patrick took hold of the gun during the struggle to take it away from Jimenez.[2] He has not shown deficient performance or resulting prejudice on this alleged deficiency.

Jimenez also complains that counsel rested without putting on any argument or testimony. Although defense counsel did not make an opening statement or a closing argument, and called no witnesses, defense counsel did put on some sort of defense by cross-examining several of the prosecution witnesses. Failing to make an argument and call witnesses is not per se ineffective performance; it is a recognized defense strategy that in some cases it is best to stand on the evidence the prosecutor has presented and take the position that it doesn't amount to the crime charged. More importantly for habeas purposes, Jimenez does not identify any particular witness that defense counsel should have called but did not or physical evidence that defense counsel should have presented but did not. While the defense looks meager, it is not clear that

---

[2] Jimenez reports that the only place his fingerprint was on the gun was under the grip. Focusing on the fact that his fingerprint was under the grip of the gun would have hurt his position that the firearm possession sentence should have been stayed. Evidence that his fingerprint was found under the grip of the gun would give strength to the argument that he possessed that gun substantially before he shot his stepfather, which would have meant that the sentence on the felon in possession of a firearm charge would not be stayed and might even have been made consecutive to his murder sentence.

10

there was something more that counsel should have done or that there was a reasonable probability that that unidentified something would have made a difference in this case. Cf. Alcala v. Woodford, 334 F.3d 862, 870-71(9th Cir. 2003) (finding deficient performance and prejudice where counsel failed to present most probative evidence in support of alibi defense, including only evidence that established time and date of alibi). This claim fails on both prongs of the Strickland test because Jimenez has failed to show deficient performance or prejudice on this claim.

### 4. Failure To Argue Theory On Possession Of A Firearm

Jimenez next contends that his attorney was deficient in that he failed to argue that Jimenez should not be punished for both the murder and the possession of the firearm due to the absence of evidence that they were separate and distinct crimes. See Order Of Amend, p. 3.

This claim must be rejected because the California Court of Appeal has already provided appropriate relief by staying the sentence for the firearm possession conviction. To understand why there is no further relief available on federal habeas, a brief review of the legal issue is necessary.

Under California law, when several crimes are committed pursuant to a single intent and objective, the court imposes a sentence for the offense with the longest possible sentence and stays execution of the sentences on the other offenses. Cal. Penal Code § 654.[3] The crime with the lesser punishment yields a stayed sentence, and that stay becomes permanent when the primary sentence (i.e., the sentence on the offense with the longest possible sentence) is fully served. This stay of execution of sentence procedure "eliminate[s] the effect of the judgment as to the less severely punishable offense insofar as penalty alone is concerned." In re. Wright, 65 Cal.2d 650, 655-56 & n.4 (Cal. 1967). The procedure protects the rights of both the state (to

---

[3]"An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Cal. Penal Code § 654.

11

impose a punishment on the less severely punishable offense if the greater offense/punishment is reversed or otherwise set aside) and the defendant (to avoid multiple punishments). See id. at n.4; People v. Beamon, 8 Cal.3d 625, 639-40 (Cal. 1973); People v. Niles, 227 Cal.App.2d 749, 755-56 (Cal. Ct. App. 1964). In essence, the stayed sentence is like an understudy, waiting in the wings and only to perform if the primary sentence cannot perform.

Here, Jimenez was sentenced to concurrent sentences on the murder count and on the firearm possession count. The California Court of Appeal granted relief on the §654 issue and stayed the sentence on the firearm possession count. See Cal. Ct. App. Opinion, pp. 4-7. In light of the California Court of Appeal's modification of the sentence, Jimenez will serve the sentence on murder conviction and, once he completes that sentence, the stay of the sentence on the firearm possession conviction will become permanent and he will never incur any punishment for it. On the other hand, if the murder conviction is ever set aside, the firearm possession conviction sentence will be activated. If this latter situation occurs, Jimenez again would be subject only to one sentence. Therefore, even if this court were to find that trial counsel was ineffective in failing to raise the § 654 issue, there would be no relief this court could grant because the dual punishment problem that resulted from the alleged ineffectiveness has already been taken care of by the California Court of Appeal's modification of the sentence to stay the firearm possession sentence.

### 5. Failure To Inform Client Of Conflict

Jimenez argues that counsel was ineffective in that he failed to inform Jimenez that "his firm represented both Mr. Young and Mr. Perez at different times." Order Of Amend, p. 3. In his motion to amend (docket # 27), Jimenez did not repeat the contention about Young, but argued that counsel failed to tell him that his office represented Perez and that the earlier-representation of Perez created a conflict of interest. To determine whether there was ineffective assistance in the non-disclosure, it is necessary to determine whether there was any conflict of interest.

A criminal defendant has a constitutional right to assistance of conflict-free counsel. Houston v. Schomig, 533 F.3d 1076, 1081 (9th Cir. 2008). "Where the conflict stems from counsel's representation of multiple defendants, the petitioner 'must establish that an actual conflict of interest adversely affected his lawyer's performance'" Id. (quoting Cuyler v. Sullivan, 446 U.S. 335, 350 (1980)). A conflict can "arise from successive representation, particularly when a substantial relationship exists between the cases, such that the 'factual contexts of the two representations are similar or related.'" Id. (quoting Trone v. Smith, 621 F.2d 994, 998 (9th Cir. 1980). The Supreme Court has not decided whether conflicts in successive representation that affect an attorney's performance require a showing of prejudice for reversal. Id. Here, there was at most a potential conflict and not an actual conflict.

Angel Perez was a critical prosecution witness against Jimenez, and testified to seeing Jimenez just after he shot the victim. Perez was represented by the alternate public defender's office. See Exh. H; see also CT 50 (during preliminary hearing, trial judge explains to attorney Leland Nerio that he would be representing Perez pro bono that day because no judge had yet made an appointment or referral for appointment due to a conflict). He earlier had been represented by the public defender's office.

At the preliminary hearing, the trial court discussed the conflict of interest issue at a time when prosecutor Dana Overstreet, assistant public defender Ed Nino, and defendant Jimenez were present. See CT 56. The court explained that he had asked attorney Nino to discuss with his supervisors "any real or apparent conflict of interest since your attorney apparently has represented both Mr. Young and Mr. Perez at different times I gather." CT 56. Attorney Nino stated that he had discussed the matter with his supervisor and that the public defender had decided not to declare a conflict on Jimenez's case. CT 57. It was Nino's position that there was no conflict of interest. The judge also noted that he had been informed that Perez would be a cooperating witness, and the judge decided to appoint "the conflicts program" to represent Perez, and Leland Nerio had been chosen by the conflicts program to represent Perez. CT 57. Defense counsel did cross-examine Perez at the preliminary hearing. See CT 98-104. When defense

counsel attempted to inquire about his juvenile record, the court stopped him, stating that juvenile petitions, "cannot be gone into without a prior court order" and the order had to be from a juvenile court judge and not a superior court judge. CT 104.

Other than the previous representation of Perez by the public defender's office, there is no evidence relative to any possible conflict. There is no evidence in the record that assistant public defender Ed Nino had ever represented Perez. Although the Houston case notes that a conflict may exist from successive representations by a public defender's office, that case is dramatically different from Jimenez's situation. There is no suggestion that Perez's legal troubles had anything to do with the present case or had anything to do with Jimenez, unlike in Houston. Perez was not the victim, unlike the situation in Houston. Perez and Jimenez were related by blood (as nephew and uncle), but had no ongoing conflict, unlike the situation in Houston. Jimenez's judge told defense counsel to ponder the possibility of a conflict and counsel later told the trial judge (in Jimenez's presence) that he had discussed the conflict issue with his supervisor and concluded that there was not a conflict of interest, unlike the situation in Houston. where the public defender said there was a conflict but the trial judge disagreed. In short, there was nothing in Jimenez's case beyond the existence of an earlier representation in an unrelated matter by the public defender's office of a former client (Perez) who as going to be a critical witness against a new client (Jimenez). Under those circumstances, it was not deficient performance for attorney Nino not to discuss with Jimenez a conflict of interest which he didn't believe existed. The claim falters on the first prong of Strickland.

Jimenez's claim also falters on the second prong of Strickland. In light of the absence of evidence of any actual conflict and the only evidence of a potential conflict was the earlier representation of the critical prosecution witness by the public defender's office, Jimenez has not shown how the result of the proceedings would have been any different if counsel had informed him of the potential conflict due to the successive representation. This case is unusual in that Jimenez had a much better understanding of the critical witness than in most cases because he was the witness' uncle and lived in the same household. Jimenez certainly would be expected

14

to be able to point to something that defense counsel could have done but didn't do vis-a-vis Perez that might show an actual conflict, yet Jimenez offers absolutely no such evidence. No prejudice resulted from defense counsel's non-disclosure of the potential conflict based on his office's earlier representation of Perez. Jimenez is not entitled to the writ on this claim.

As to Fred Young, the claim is even weaker. Fred Young was intended to be a witness for the firearm possession charge, but never was called as a witness at trial and never gave any testimony at the preliminary hearing. When Young was called as a witness at the preliminary hearing, he immediately invoked his Fifth Amendment privilege against self-incrimination and did not testify. The court disallowed further questioning until his attorney was contacted. At the court's request, the prosecutor made an offer of proof, and explained that she anticipated that Young would testify that he was a longtime acquaintance of Jimenez's and that he had seen Jimenez in possession of a handgun within a week before the night of the shooting. CT 47. The prosecutor also explained that Young had a felony criminal record and was awaiting trial on a new charge. See CT 48. After a brief recess, the prosecutor decided not to call Young as a witness during the preliminary hearing. CT 50. The court then observed that that decision "takes care of any conflict issue at this time. It is not yet ripe, whether it ever ripens needs to be seen. Obviously both of you should make appropriate notation in your file." CT 50. Young did not testify at Jimenez's trial. Jimenez has failed to show deficient performance or resulting prejudice in his attorney's failure to disclose to him that there might be a conflict with witness Fred Young, who never testified against him.

## CONCLUSION

Petitioner's motion for access to a law library to prepare his motion for a stay is dismissed as moot, motion for a stay is granted, and motion to amend is granted. (Docket # 25, # 26, and # 27.) The petition for writ of habeas corpus is DENIED. The clerk shall close the file.

IT IS SO ORDERED.

DATED: July 13, 2009

_____
SUSAN ILLSTON

15

United States District Judge